## LESS v. ENGLISH.

(Circuit Court of Appeals, Eighth Circuit. January 10, 1898.)

### No. 830.

FEDERAL COURTS—JURISDICTIONAL AMOUNT—PLEADING.

In a suit to foreclose a mortgage securing the sum of $2,000, the bill alleged that plaintiff advanced an additional $2.25 to pay the fee for recording the mortgage, "for which defendant is liable to him." *Held*, that the averment of liability was a mere conclusion of law, and that the bill therefore failed to show that more than $2,000 was involved.

Sanborn, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the Eastern District of Arkansas.

Morris M. Cohn and Charles Coffin, for appellant.
J. M. Moore, for appellee.

Before SANBORN and THAYER, Circuit Judges, and RINER, District Judge.

RINER, District Judge. On the 31st day of January, 1894, Michael English, the appellee, filed his bill in the circuit court for the Western division of the Eastern district of Arkansas for the foreclosure of a deed of trust executed by Isaac Less and Gussie Less, his wife, to secure a loan from English to Less. The material averments of the bill are that English is a citizen of the state of Missouri, and that the defendants are citizens of the state of Arkansas; that in May, 1893, Less applied to English for a loan of $4,500, and offered as security therefor a mortgage or deed of trust on certain real estate in Lawrence county, Ark.; that English stated to Less, at the time he applied for the loan, that he did not then have the money, but that he could get it within a short time, and make the loan as requested; that Less thereupon executed and delivered to one M. D. Baber a deed of trust on lot No. 1 and the north half of lot No. 2 in block No. 26, and on lot No. 7 in block No. 17, in the town of Walnut Ridge, Lawrence county, Ark.; that the deed of trust recited that it was executed for the purpose of securing the loan of $4,500, evidenced by nine promissory notes, each in the sum of $500, and payable on or before two years after date, with interest from date until paid at the rate of 10 per cent. per annum; that after the deed and notes were executed and delivered by Less, English "advanced to defendant the sum of $2,000, and advanced, to pay the recorder's fee for record-

ing said deed, the sum of $2.25, for which defendant is liable to him"; that, on account of stringency in the money market, and the difficulty in collecting money due him, English was unable to obtain the residue of the money necessary to advance to the defendant the full sum of $4,500; that, when he ascertained this fact, he at once informed the defendant, and offered to credit his notes, and to satisfy the record of the mortgage or deed of trust executed by Less to Baber by the sum of $2,500, and demanded that the notes and mortgage be delivered to him, and proposed, if defendant preferred to do so, that he could return the money which had been advanced him, and plaintiff would thereupon surrender the notes and satisfy the mortgage in full, charging him no interest for the time he had had the use of the money.    It was further averred that Baber, the trustee in the deed of trust, had died, and that the deed of trust and notes were in the custody of J. M. Beakley, who was made a party defendant to the bill; that Less had covenanted to keep the mortgaged premises insured against fire for the benefit of English, and, if he should fail to observe his covenant to insure the property for the benefit of the plaintiff, the whole of said indebtedness and each and all of the notes should become due, and be considered due and payable at once; that Less had neglected and refused to keep the property insured, and had refused to allow the deed of trust and notes to be delivered to English.    To this bill the defendant J. M. Beakley filed an answer in the nature of a disclaimer, stating that he had no interest in the case whatever, but, being the successor of M. D. Baber, who, at the time of his death, had the mortgage and notes described in the bill of complaint, they came into his possession, and he asked to be allowed to deliver the mortgage and notes into the custody of the court, and to be dismissed without costs.

The defendant Less filed a separate answer, admitting the execution of the deed of trust and notes, but alleging that they were executed for a loan of $4,500, which English agreed and contracted to advance and loan to him for the purpose of erecting a building on lot No. 7, in block 17, Walnut Ridge, Ark.; that English was advised of the purpose for which the money was borrowed, and, relying on the good faith of plaintiff, he executed and delivered the deed of trust and notes to Baber, as trustee, for the plaintiff, and that Baber had placed the deed on record.    He also charged that the plaintiff failed to advance the amount of $4,500, as he had agreed to do; that, on account of his failure to advance the full amount, he was hindered and delayed in the construction of his building from the 1st of August, 1893, to the last of February, 1894; that he lost in rents during that time the sum of $1,162.50, $400 on lumber, and interest on money obtained from other sources, $100, and offered to pay plaintiff the sum of $500 in full of all he owed him.    He denied that he was bound, by the deed of trust, to keep the houses on the lots conveyed insured in any amount, for plaintiff's benefit, and that the contract of the plaintiff to advance the money was not based upon the condition that he would keep the property insured for plaintiff's benefit.    A general replication was filed to this answer, and on the final hearing, January 24, 1896, a decree was entered in favor of English for the sum of

$1,546.85, and directing that, if defendant Less failed to pay and satisfy the decree within 20 days from the date thereof, the mortgaged premises be sold. From this decree the defendant Less appealed to this court, assigning several errors, the first of which only we find it necessary to consider, namely, "that the amount in controversy does not exceed the sum of two thousand dollars, exclusive of interest and costs."

Upon the face of the bill it is apparent that the actual value of the matter in dispute, exclusive of interest and costs, is the amount which the plaintiff advanced to the defendant, namely $2,000, and no more. The allegation of the bill is that, after the execution of the notes and deed of trust, the "plaintiff advanced to the defendant the sum of $2,000, and advanced, to pay the fee for recording the said deed, the sum of $2.25, for which defendant is liable to him." The amount in controversy is not sufficient to give the circuit court jurisdiction unless it can be said that this $2.25 is a part of the matter in dispute. This was a suit to foreclose a mortgage given to secure the payment of certain promissory notes amounting in the aggregate to $2,000. It was entirely competent, of course, for the parties to have stipulated in the mortgage that the defendant should pay for recording it, but it is not alleged in the bill that he did so, or that he ever requested the plaintiff to pay the recording fee, and agreed to become responsible to the plaintiff therefor. No fact whatever in relation to such an agreement is alleged in the bill. The allegation is that the plaintiff "advanced to pay the recorder's fee for recording the said deed the sum of $2.25, for which the defendant is liable to him." This is not an allegation of fact, but a conclusion of law. No proof whatever was offered tending to show that the defendant had ever at any time requested the plaintiff to pay this amount for him, or that he had agreed to be liable to the plaintiff for it, and, in the absence of such agreement on his part, either express or implied, there would be no liability on his part to pay it. It was no part of the original claim, and, if the defendant is liable therefor, it is by reason of a contract or agreement to pay it.

The jurisdiction of the federal court upon a money demand is governed by the value of the actual matter in dispute as shown by the whole record, and not by the damages claimed, or the prayer for judgment alone. In the case of Hilton v. Dickinson, 108 U. S. 165, 2 Sup. Ct. 424, the supreme court announced the rule as follows:

"It is undoubtedly true that, until it is in some way shown by the record that the sum demanded is not the matter in dispute, that sum will govern in all cases of jurisdiction; but it is equally true that, when it is shown that the sum demanded is not the real matter in dispute, the sum shown, and not the sum demanded, will prevail."

When it clearly appears in the progress of the case that it does not substantially involve a dispute or controversy within the jurisdiction of the circuit court, it is the duty of that court to dismiss the suit; and when a groundless and fictitious claim is set up for the purpose of swelling the plaintiff's claim on the face of his bill to an amount within the jurisdiction of the court, it must necessarily fail of its purpose. In this case, if the parties had stipulated in the mortgage,

or otherwise agreed, that the defendant should be liable to the plaintiff for this recording fee, it would have been an easy matter to have so alleged in the bill. We cannot assume that there was such an agreement between the parties, in the absence of allegation or proof of that fact. The plaintiff's claim, so far as it relates to the amount required to give jurisdiction to the circuit court, must be made in good faith, and it should be made to appear by the bill that he has a valid claim against the defendant for an amount sufficient to give the court jurisdiction. When so made, the jurisdiction will be maintained, although the plaintiff may fail to make good his contention for the amount. Thus, in actions where the jury have it in their power to assess the damages in a given case,—as in trespass and the like,—the court cannot ordinarily assume that the plaintiff's claim to cover the requisite jurisdictional amount is merely colorable, and not made in good faith; but, as stated by this court in the case of Bank of Arapahoe v. David Bradley & Co., 19 C. C. A. 206, 72 Fed. 867:

"In determining whether a claim is made in good faith, or is fictitious, and made only for imposing on the court a case not properly within its jurisdiction, the plaintiff will be held to a knowledge of the well-settled rules of law; and when the actual matter in controversy is inadequate in value to confer the jurisdiction, and the additional amount required for that purpose is attempted to be supplied by setting up a claim for something easily susceptible of proof, if made in good faith, but in support of which no proof is offered, and no satisfactory explanation given, or by adding a claim for which the law gives no right of action, and for which there can be no recovery, such a claim must be held to be fictitious, and to have been made for the purpose of perpetrating a fraud on the jurisdiction of the court."

Under the allegations of this bill the law gave to the plaintiff no right to recover this $2.25 recording fee. There was no agreement, either express or implied, so far as the bill shows, that the defendant would pay it, and we think the circuit court should, of its own motion, have dismissed the bill for want of jurisdiction. Hartog v. Memory, 116 U. S. 588, 6 Sup. Ct. 521; Williams v. Nottawa, 104 U. S. 209; Robbins v. Ellenbogen, 36 U. S. App. 242, 18 C. C. A. 83, and 71 Fed. 4; Barth v. Coler, 19 U. S. App. 646, 9 C. C. A. 81, and 60 Fed. 466; Thurber v. Miller, 32 U. S. App. 209, 14 C. C. A. 432, and 67 Fed. 371. The decree of the circuit court is reversed, and the cause is remanded, with instructions to dismiss the bill at complainant's cost for want of jurisdiction.

SANBORN, Circuit Judge (dissenting). The opinion and order of the court reverses a just decree for the enforcement of the collection of an overdue debt of $2,546.85, and directs a dismissal of the bill on which it is founded, because the appellant, who filed no demurrer, and made no objection in the court below, claims for the first time in this court that the trial court had no jurisdiction of this suit, because the admitted allegation of the bill was that the complainant "advanced to defendant the sum of $2,000, and advanced to pay the recorder's fee for recording the said deed the sum of $2.25, for which defendant is liable to him," when a perfect pleading would have substituted the words "which the defendant promised to repay" for

the last seven words of this averment.    It may be that this allega-
tion was demurrable.    If it was, it is certain that, if a demurrer had
been interposed, the court below would have permitted the appellee
to amend his bill by inserting an allegation that he advanced this
money at the request of the appellant, or that the appellant promised
to repay it.    No demurrer was interposed.    No objection to the suf-
ficiency of the complaint or to the jurisdiction of the court was sug-
gested at the trial.    The answer of the defendant was a confession
and avoidance.    He admitted the allegations of the complaint, and
pleaded a counterclaim.    Upon this answer he tried his case, and,
after he was defeated in a court to whose jurisdiction he had sub-
mitted without a murmur, he comes here for a reversal upon an objec-
tion which he never presented to the trial court.    It is clear that, if
the decree below had been in his favor, the objection which he urges
would never have been heard.    He sought to obtain the opinion of
the court below upon his case, and then to affirm its jurisdiction and
the estoppel of its decision, if it was favorable, and to repudiate it if
it was unfavorable.    Such experiments ought not to be encouraged
and I am unable to concur in the opinion or the result in this case
for the following reasons:

1. It is an invariable rule of practice, both at law and in equity,
that an objection to the sufficiency of a complaint, which might have
been fatal on demurrer, will not be sustained when made for the first
time in an appellate court, if the facts material to support the judg-
ment or decree are fairly inferable by any reasonable intendment
from what is alleged in the pleading.    Drake v. Barton, 18 Minn.
462, 464 (Gil. 414); Adam v. Norris, 103 U. S. 591, 595; Lincoln v.
Iron Co., 103 U. S. 412, 415; Railroad Co. v. Lindsay, 4 Wall. 650,
656; Ankeny v. Clark, 148 U. S. 345, 355, 13 Sup. Ct. 617; Morrow
Shoe Mfg. Co. v. New England Shoe Co., 6 C. C. A. 508, 57 Fed. 685;
Loewer v. Harris, 6 C. C. A. 394, 57 Fed. 368; Herrick v. Leveller
Co., 8 C. C. A. 475, 60 Fed. 80; Manufacturing Co. v. Mellon, 7 C.
C. A. 439, 58 Fed. 705; Railway Co. v. McLaughlin, 17 C. C. A.
330, 70 Fed. 669.    The facts that the appellant requested the appellee
to advance the $2,000 and the $2.25, and promised to pay them back
to him, are as conclusively inferable from the averment that he is
liable to him for them as is the conclusion that he is liable from the
facts that he requested him to advance the money and promised to
repay it.    It is conceded that the appellant was liable for the $2.25
if he requested its advance, or promised to refund it, and under the
rule applicable to pleadings after judgment or decree, to which we
have referred, the facts on which the legal liability rests in so simple
an action as this are as conclusively inferable from an averment of the
liability, after judgment or decree, as the liability is from an allega-
tion of the facts before judgment or decree.    Thus in Hurd v. Simon-
ton, 10 Minn. 423 (Gil. 340), it was held that the facts of a demand
and refusal to deliver personal property were inferable after judg-
ment from the allegation that the defendant "wrongfully detains" it,
although that allegation was a conclusion of law, and demurrable
as such before judgment.    The only possible objection to the allega-
tion relating to the $2.25, which is challenged in this case, is that it

pleads a conclusion of law instead of the facts which lead to that conclusion, and this court has disposed of that objection in these words: "After answer filed an objection that the complaint does not state facts sufficient to constitute a cause of action is good only when there is a total failure to allege the substance or groundwork of a good cause of action, and is not good when the allegations are simply incomplete, indefinite, or statements of conclusions of law. Laithe v. McDonald, 7 Kan. 254, 261; Glaspie v. Keator, 12 U. S. App. 281, 5 C. C. A. 474, and 56 Fed. 203." City of Plankinton v. Gray, 27 U. S. App. 321, 324, 11 C. C. A. 268, and 63 Fed. 415.

2. The act of congress of September 24, 1789 (1 Stat. p. 91, c. 20, § 32), Rev. St. § 954, in my opinion, forbids a federal court to reverse a judgment or decree for so trivial a defect in a bill as a difference between an allegation that the complainant advanced $2,002.25, and the appellant became liable to him for it, and the averment that he advanced it at the appellant's request and he promised to repay it, in a case where that defect has not been presented by demurrer or otherwise until after the judgment or decree. That act reads:

"Sec. 954. No summons, writ, declaration, return, process, judgment or other proceedings in civil causes, in any court of the United States, shall be abated, arrested, quashed, or reversed for any defect or want of form; but such court shall proceed and give judgment according as the right of the cause and matter in law shall appear to it, without regarding any such defect, or want of form, except those which, in cases of demurrer, the party demurring specially sets down, together with his demurrer, as the cause thereof; and such court shall amend every such defect and want of form, other than those which the party demurring so expresses; and may at any time permit either of the parties to amend any defect in the process or pleadings, upon such conditions as it shall, in its discretion and by its rules, prescribe."

In Parks v. Turner, 12 How. 39, 45, Chief Justice Taney, speaking of this act, said:

"The section of the law referred to directs the courts of the United States to proceed and give judgment according as the right of the cause and matter in law shall appear to them, without regarding any imperfections or defects, or want of form in the writ, declaration or other pleading, return, process, judgment or course of proceeding whatever, except those only in cases of demurrer, which the party demurring shall specially set down and express together with his demurrer as the cause thereof. This is a remedial statute, and must be construed liberally to accomplish its object. It not only enables the courts of the United States, but it enjoins it upon them as a duty, to disregard niceties of form, which often stand in the way of justice, and to give judgment according as the right of the cause and matter in law shall appear to them."

To the same effect are Stockton v. Bishop, 4 How. 155, and note, and Gardner v. Lindo, 1 Cranch, C. C. 78, Fed. Cas. No. 5,231.

This case has been heard and decided upon its merits in the court below, and its decree has been challenged by this appeal. A careful examination of the record, with the aid of the briefs of counsel, discloses the indisputable fact that the decree is according to the "right of the cause and matter in law." The defect on account of which the case is to be reversed was not "specially set down" by the appellant "together with his demurrer as the cause thereof," nor was it called to the attention of the court below in any way. The purpose of the act of congress is obvious. It is to curtail the law's delay, and prevent the reversal of just judgments on account of defects that

are without merit. Its words are plain, and their meaning clear, and they seem to me to forbid the reversal of this decree on account of the slight defect in pleading which the appellant failed to set down as demurrable in the court below, which would have been amended at once as of course if he had, and which he now presents for the first time in this court.

3. The failure of the appellant to present the question of jurisdiction to the lower court by demurrer, plea, or answer, and his participation in the trial of the merits of the issues tendered by the confession and avoidance he pleaded in his answer, was a waiver of the objection to the jurisdiction of the court, and it is too late to present it for the first time here. Express Co. v. Kountze Bros., 8 Wall. 342, 351; Hartog v. Memory, 116 U. S. 588, 6 Sup. Ct. 521; Greeley v. Lowe, 155 U. S. 58, 75, 15 Sup. Ct. 24; Association v. Sparks, 83 Fed. 225; Tyler v. Savage, 143 U. S. 79, 97, 12 Sup. Ct. 340; Preteca v. Land-Grant Co., 4 U. S. App. 326, 1 C. C. A. 607, and 50 Fed. 674; Foltz v. Railway Co., 19 U. S. App. 576, 8 C. C. A. 635, and 60 Fed. 316; Reynolds v. Watkins, 9 C. C. A. 273, 60 Fed. 824; Railway Co. v. Harris, 27 U. S. App. 450, 12 C. C. A. 598, and 63 Fed. 800; Martin's Adm'r v. Railroad Co., 151 U. S. 673, 687–691, 14 Sup. Ct. 533; Knight v. Railway Co., 9 C. C. A. 376, 61 Fed. 87; Railway Co. v. Saunders, 151 U. S. 105, 14 Sup. Ct. 257; Railway Co. v. McBride, 141 U. S. 127, 11 Sup. Ct. 982; Railway Co. v. Cox, 145 U. S. 593, 12 Sup. Ct. 905. The acts of March 3, 1887, and August 13, 1888 (24 Stat. p. 552, c. 373, and 25 Stat. p. 433, c. 866), contract the jurisdiction of the federal courts, but neither they nor the act of 1875, which they amend, abrogate the salutary rules of practice and pleading which forbid a party to interpose a technical objection to the jurisdiction of the court after he has been defeated in a fair trial of his case upon its merits. The first section of each of the acts of 1887 and 1888 prohibits the maintenance of a suit against a defendant in any other district than that of which he is a resident; but it was held in Railway Co. v. Saunders, Railway Co. v. McBride, and Railway Co. v. Cox, supra, that a defendant who pleads to the merits of his case, and proceeds to a trial without presenting the objection, waives it, and is conclusively bound by the judgment. The third section of each of these acts prescribes the time within which a case may be removed from the state to the federal court, and it is settled that, where it appears to the circuit court upon a timely motion to remand that the removal was too late, it is its duty to send the case back to the state court, because the national court has no jurisdiction of it. But in Martin's Adm'r v. Railroad Co., supra, the supreme court held that the objection that the circuit court had no jurisdiction because the petition for removal was not filed in time was waived, and could not be considered by the appellate court, if it had not been made in the court below before a trial upon the merits.

Section 723 of the Revised Statutes declares that "suits in equity shall not be sustained in either of the courts of the United States in any case where a plain, adequate and complete remedy may be had at law"; but the supreme court, in Tyler v. Savage, 143 U. S. 79, 97, 12 Sup. Ct. 340, and this court in Preteca v. Land-Grant Co., Foltz v.

Railway Co., and Railway Co. v. Harris, supra, have held that the objection that the trial court had no jurisdiction of a suit in equity, because there was an adequate remedy at law, comes too late in an appellate court, and cannot be considered, unless it was made in the court below. Under section 1 of the acts of 1887 and 1888, a case which is dependent on diverse citizenship to give the federal court jurisdiction cannot be maintained if the requisite citizenship does not exist. But a defendant who pleads to the merits, and proceeds to the trial of such a case, without pleading the absence of the requisite diversity of citizenship, thereby waives the question of jurisdiction, and cannot be heard to urge it in the appellate court for the first time. This is true whether the objection appears on the face of the complaint so that it may be presented by demurrer, or must be raised by plea and proof. Thus in Greeley v. Lowe, 155 U. S. 58, 75, 15 Sup. Ct. 24, and Association v. Sparks, supra, the allegations of diversity of citizenship in the complaints were denied by the answers, no proof on the issue of citizenship was introduced, and the cases were tried on their merits, but the supreme court and this court held that, as the objection to the jurisdiction was not specially pleaded or called to the attention of the trial court, it could not be considered in the appellate court. In Express Co. v. Kountze Bros., 8 Wall. 342, 351, the complaint did not clearly allege the citizenship of the parties. It averred only that the plaintiffs were a firm of natural persons associated together for the purpose of carrying on the banking business at Omaha, and had been for a period of 18 months engaged in that business at that place, and that the defendant was a foreign corporation created under the laws of New York. In the face of a demurrer the allegation of the plaintiffs' citizenship was clearly insufficient, but, after trial on the merits, the supreme court said:

"The course of proceeding in the court below shows that the parties to the suit recognized it as being of federal jurisdiction, and it could only be so [as there was no federal question involved] on the ground that the plaintiffs and defendant were citizens of different states. If the parties had thought otherwise, after the cause reached the circuit court, the point would have been taken, and an effort made at least to test the jurisdictional question. The record shows that nothing of the sort was attempted."

These authorities are perhaps sufficient to show that the salutary rule they illustrate is equally applicable to questions of jurisdiction in the federal courts and to other preliminary issues. In my opinion, this rule should be applied to the case at bar. The bill in this case clearly showed that the amount claimed by the appellee was $2,002.25, without interest or costs. Its allegations were ample to support a decree for that amount after it was rendered upon a hearing upon the merits. They were not challenged by demurrer; they were admitted by answer, and no question of jurisdiction was suggested to the trial court. As the supreme court said in the Express Co. Case, the parties recognized this suit as of federal jurisdiction, and it could only be so on the ground that the amount in dispute was $2,002.25, exclusive of interest and costs. If they had thought otherwise, the point would have been taken, and an effort would have been made to test the jurisdictional question in the trial below. It seems

to me that the appellant ought not now to be permitted to reverse this decree for a defect that was either so insubstantial that it never occurred to him to present it to the lower court, or that he knew was so easily remedied that to present it was to cure it.

4. In my opinion, there is nothing in this record to warrant an appellate court in finding that the claim of the appellee for the $2.25, which he averred he advanced to pay the fees for recording the trust deed, and for which he alleged that the appellant became liable to him, was fictitious, colorable, or interposed in bad faith. One of the propositions in the opinion of the majority seems to be that this claim was interposed in bad faith to impose on the court a case not properly within its jurisdiction. In support of this conclusion the case of Bank of Arapahoe v. David Bradley & Co., 36 U. S. App. 519, 19 C. C. A. 206, and 72 Fed. 867, is cited, and a sentence from the opinion in that case is quoted. It has no relevancy to the question here at issue. In that case a suit was brought to recover from a bank the sum of $1,643.68 for fraudulent representations which induced the plaintiff to sell to a third person goods of that value. To swell the amount of their claim, the plaintiffs alleged that they had incurred costs to the amount of $475 in an unavailing effort to collect the value of these goods from the vendee, and claimed $2,500 punitive damages. A demurrer was promptly interposed on the ground that the court had no jurisdiction, because the amount in controversy was not over $2,000, and that demurrer was overruled. An answer was filed which denied the allegations of the complaint, and raised the question of the fictitious character of these claims. No evidence was offered in support of the claim for the $475, and that claim and the claim for punitive damages were equally unfounded as a matter of law. The plaintiffs recovered a verdict for the value of the goods only, and this court reversed it on the ground that the demurrers should have been sustained by the court below, because the punitive damages, and the expenses of endeavoring to collect the claim from the vendee, could not have been recovered from the bank in any event, and the plaintiffs were chargeable with knowledge of this law. The difference between that case and the case in hand is marked and plain. First. In that case, the fictitious claims which enhanced the amount claimed to be in dispute were unfounded in law, while in the case at bar the claim for $2.25 for money, advanced to pay for recording the trust deed, is a legal claim, if the appellant requested its advance, or promised to repay it; and in this court these facts are conclusively established by the decree. Second. In that case the fictitious claims were finally denied by the answer, and the fact that the plaintiffs introduced no evidence to support the claim for costs was proof of its colorable character. In this case the allegation as to the claim for the advance of the $2.25 was admitted by the answer, and the absence of evidence to sustain it raised no presumption against it, because no evidence was necessary to establish it. Third. The defendant in that case promptly challenged the jurisdiction of the court by a demurrer interposed on the ground that the amount in dispute did not exceed $2,000, while in the case at bar the appellant tried his case on the merits on other issues which he tendered by his answer

and never suggested want of jurisdiction, or the fictitious character of this claim, until he presented that objection to this court. In fact, the fictitious character of the unfounded claims which swelled the amount was pointed out by demurrer, presented by answer, tried upon evidence, and found by a jury, in the case of Bank of Arapahoe v. David Bradley & Co., and these facts were established by the evidence in the bill of exceptions which was presented to this court upon the hearing here; while the claim in question in the case in hand was never challenged by demurrer, was admitted by answer, and stood well pleaded after the decree, under the decisions of this court in City of Plankinton v. Gray, 27 U. S. App. 321, 11 C. C. A. 268, and 63 Fed. 415; Glaspie v. Keator, 12 U. S. App. 281, 5 C. C. A. 474, and 56 Fed. 203.

In Ashley v. Board, 16 U. S. App. 656, 709, 8 C. C. A. 455, 470, and 60 Fed. 55, the circuit court of appeals of the Sixth circuit declared that, in its opinion, the duty of passing upon a question of this sort was devolved, under the statute, in the first instance, upon the trial court; but that, nevertheless, the appellate court, in a clear case, would take notice of the fact and would remand the case with directions to dismiss it. "But," said the court, "the court would deal with such a question as it does, on writ of error, with any other question of fact; that is to say, proof of the fact must be clear and unequivocal, in order to justify the court, upon a writ of error, in assuming the fact to be so. Such was the case in every instance which has been brought to our attention. It either appeared from the record itself, or was conclusively shown by the proof brought up in the bill of exceptions. In this case, as is implied from our opinion, we did not think the proof so clear as to justify such action in the appellate court." This seems to me to be a correct statement of the rule in this case. Under it the case of Bank of Arapahoe v. David Bradley & Co. was properly decided, because the fact of the fictitious character of the plaintiff's claims in that suit was at issue, was raised by demurrer, was tried after notice and answer, was found by the verdict in the court below, and was established by the record and the evidence in the bill of exceptions which was presented to this court. But in the case at bar the charge that the claim of the appellee for the $2.25 is fictitious, colorable, and made in bad faith to impose on the court below a case not within its jurisdiction, was not made in that court. The appellee had no notice of it, and no opportunity to meet and try it in the only court where such a charge can be fairly tried. His first notice of it is in this court, and here no evidence is produced to sustain it. Fraud and collusion are not presumed, and the mere fact that the appellee presented to the circuit court a claim for $2,002.25, which the appellant admitted, can hardly be said to raise a presumption of guilt against him. I think that he should be presumed to be innocent until evidence of his guilt is produced, and, as I have been unable to find any such evidence in this record, I have been forced to the conclusion that there is not only no such clear and unequivocal proof of his guilt as would authorize his condemnation without a trial, but no proof at all, and for this reason I think the charge against him should be dismissed, and the decree below should be affirmed. Hartog v. Memory, 116 U. S. 588, 6 Sup. Ct. 521.

5. If I am mistaken in my view of the law, and this decree ought to be reversed, yet the order to dismiss the bill at plaintiff's cost for want of jurisdiction seems to me to be erroneous. This order deprives the circuit court of the power to permit an amendment of the bill, a plea to the jurisdiction, and a trial of the issue whether or not the plaintiff's claim is fictitious and colorable. An opportunity should be given to the appellee to try this issue in the forum of his choice. This is the practice in the supreme court and in the other circuit courts of appeals in cases of this character, and, if the decree is to be reversed, the circuit court should be instructed to permit the complainant to amend his bill, to permit the defendant to interpose a plea to the effect that this claim of $2.25 is fictitious and fraudulent, to try that issue, and, if the plea is sustained, to dismiss the bill, and, if it is not, to enter the former decree. Stuart v. City of Easton, 156 U. S. 46, 15 Sup. Ct. 268; Robertson v. Cease, 97 U. S. 646, 651; Hartog v. Memory, 116 U. S. 588, 6 Sup. Ct. 521; Ashley v. Board, 16 U. S. App. 656, 8 C. C. A. 455, 468, and 60 Fed. 55.