## MAFFET v. QUINE.

(Circuit Court, D. Oregon. July 8, 1899.)

**1. JURISDICTION OF FEDERAL COURTS—AMOUNT IN CONTROVERSY.**

It is sufficient to sustain the jurisdiction of a circuit court, where the requisite jurisdictional facts are shown by the complaint, that it does not at any time thereafter satisfactorily appear to the court that the suit does not really and substantially involve the jurisdictional amount.

**2. SAME.**

A suit to enjoin the defendant from destroying a flume where it crossed his land involves the value of the flume as an entirety, and where such value is admitted to be $2,000, and it is further admitted that defendant had, prior to the suit, partially destroyed the flume on his land, rendering its repair necessary, damages for which injury the plaintiff might recover in the suit, the jurisdictional amount satisfactorily appears.

**3. EQUITY—SUBMISSION OF CAUSE—RIGHT OF REARGUMENT.**

Where a cause has been fully argued and submitted on all the questions involved, and the court enters an order of dismissal for want of jurisdiction, which order it afterwards sets aside, the defendant is not entitled to reargue the case upon the other questions involved.

**4. RIGHT OF WAY OVER PUBLIC LANDS.**

Where an appropriation of a right of way for a flume, such as congress has authorized upon unoccupied public land, is made upon granted, but unearned, railroad land, and subsequently the land so occupied is forfeited to the government, the appropriation is effective, so far as the government is concerned; and a homesteader, whose settlement was begun before the forfeiture, but subsequent to the location and construction of the flume, takes subject to the burden of such flume.

On Petition for Rehearing. For former opinion, see 93 Fed. 347.

BELLINGER, District Judge. In this suit the plaintiff seeks to enjoin the defendant from tearing down and destroying a certain flume, constructed and in operation prior to the commission by the defendant of the acts complained of, across the premises of the defendant, and used in connection with certain water rights and with the carrying on of the lumber business owned and carried on by the plaintiff and her lessees. The case was heard upon all questions involved, and thereafter the court dismissed the complaint for want of jurisdiction, upon the ground that it did not appear from the evidence that the amount in controversy was of a value exceeding $2,000. Upon petition for a rehearing this order was set aside, the court being of the opinion that the order of dismissal was erroneous, and that the court was not without jurisdiction; and thereupon, and upon consideration of the other questions involved, a decree was rendered in favor of the plaintiff, as prayed for, perpetually enjoining the defendant from the commission of the acts complained of. The defendant files his petition asking for a rehearing. Upon this petition the defendant seeks a re-examination of the question of jurisdiction, and renews his contention that the complainant failed to introduce testimony tending to prove the present value of the flume, or the matters in controversy, and asks that an opportunity be given to the defendant to present to the court the state of the testimony and of the authorities upon this issue. The petition for a rehearing makes the further point that the defendant was denied leave by the court, upon

the hearing of the motion for a preliminary injunction, to amend his answer so as to admit proof that the land in question was within the grant to the Northern Pacific Railroad Company at the time plaintiff's grantors entered upon the same and constructed their flume, and the further point that the act of forfeiture of the railroad grant provides that the qualified homesteaders upon the land at the date of the forfeiture for six months thereafter should have the exclusive right to enter the land under the homestead laws; the contention as to this being, that by this provision the homestead right of Quine, the defendant, attached prior in law to the time of the location theretofore made, and while the land was still covered by the grant. The rehearing is further asked upon the ground that the counsel for the defendant understood that this case would not be decided upon the merits without further hearing, but would be decided simply upon the question of jurisdiction; and he therefore pleads surprise, and asks that the case be reopened for further arguments as to the other questions, at least, decided by the court.

The question of jurisdiction in this case has been fully considered, and there is nothing in the authorities cited in this petition that affects the conclusion reached on that question. I am satisfied that it is enough to sustain the jurisdiction that the complaint shows the amount in controversy to exceed in value the sum of $2,000, and that the contrary of this does not appear to a legal certainty from the evidence. In Barry v. Edmunds, 116 U. S. 558, 6 Sup. Ct. 501, it is held that the court is not at liberty to dismiss a suit upon his personal conviction that the amount involved is less than that required to give jurisdiction, unless the facts on which the persuasion is based are such as to create a legal certainty of the conclusion based on them. In this case there was no personal conviction of the court, from the evidence in the case, that the amount in controversy was less than the jurisdictional amount. The action of the court was based solely upon the fact that the evidence failed to establish the allegation of the complaint as to the value of the subject-matter of the suit. The answer admitted the value, up to the amount of $2,000; and there was testimony tending to show that the property in controversy, together with other property, had been sold previously for the sum of $8,000. There is therefore no inference in this case that the amount stated in the declaration was merely colorable. The suit is to restrain the commission of a tort, and is therefore one where exemplary damages might be allowed; so that, in any view of it, it is not a case where a rule of law fixes the limit of a possible recovery. The same doctrine is laid down in the case of Wetmore v. Rymer, 169 U. S. 115, 18 Sup. Ct. 293. For the defendant, the cases of Oleson v. Railroad Co., 44 Fed. 2, and Cameron v. U. S., 146 U. S. 535, 13 Sup. Ct. 184, are cited. Neither of these cases has any bearing on the conclusion here reached. The case of Oleson v. Railroad Co., was a suit for an injunction to restrain the operation by the defendant of a certain railroad, alleged to have been unlawfully constructed on a public highway. The case was presented for the complainant upon the assumption that the value of the railroad (which was alleged to be of the value of $6,000) was the amount in dispute. But the court held otherwise. It

was not the value of the railroad, but the value of the use of the road, which the plaintiff sought to enjoin, by the defendant, who was operating the railway as a lessee, that constituted the thing in controversy. So, too, of the case of Cameron v. U. S., which was a proceeding to compel the defendant to abate a wire fence with which he had inclosed 800 acres of the public lands of the United States, as alleged in the complaint, without title or claim or color of title thereto. In this case the value of the land was not the measure of the amount involved in the controversy. The value of the color of title to the property, "which is hardly capable of pecuniary estimation," and, if otherwise, of which there was no evidence of value in the case, constituted the subject-matter of the suit. This question is very fully considered in the case of the Bank of Arapahoe v. David Bradley & Co., 19 C. C. A. 206, 72 Fed. 867. The decision of these cases is upon the statute of 1875, which provides:

"That if, in any suit commenced in a circuit court, * * * it shall appear to the satisfaction of said circuit court, at any time after such suit has been brought, * * * that such suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of said circuit court, * * * the said circuit court shall proceed no further therein, but shall dismiss the suit."

So that it is enough to sustain the jurisdiction—the jurisdictional facts appearing in the complaint—that it does not at any time thereafter satisfactorily appear to the court that the suit does not really and substantially involve the jurisdictional amount. But in this case the jurisdiction need not depend upon this principle, although its application is decisive of the question. The answer admits that the flume in question is of the value of $2,000, and this value is one of the things involved here. If the defendant is permitted to destroy this flume where it crosses his land, the flume property as a whole is destroyed, and the plaintiff suffers loss in the amount of its value. But it is also claimed that the act of the defendant in breaking down and destroying the flume makes it necessary for the plaintiff to go to great expense in making repairs. The answer alleges the fact to be that such repairs can be made for $10. This is an admission of damages made necessary by the repairs required, in addition to the value of the flume, of at least that amount; and in this suit the court might award such damages to the plaintiff, as well as exemplary damages, either of which would make the amount in controversy above $2,000.

As to the claim made by the defendant in this petition, that he has been surprised in the decision of the court without further argument, it is enough to say that all questions involved were argued at length, and fully presented, with a view and in the expectation that the court would consider them. The fact that the bill was dismissed for want of jurisdiction, and this order of dismissal afterwards set aside, does not make it necessary that the other questions presented in the case, and not passed upon, should be reargued. There is no room for surprise to the defendant in the fact that he has not been allowed an opportunity to argue these same questions

over again. Moreover, the petition for rehearing presents nothing not already considered by the court.

As to the point that the court refused leave to amend, so as to enable the defendant to prove that the land in question was covered by the Northern Pacific Railroad grant, it is enough to say that this question is wholly immaterial. That fact is conceded, and the court takes account of it in the conclusion reached upon the merits. It does not alter the case that the act of congress gives homesteaders an exclusive right, for six months after the forfeiture, to enter the forfeited lands under the homestead laws. This is a mere preference. It in no wise affects the title taken by the homesteader, and does not enlarge his rights over what they would have been without this preference. As between the defendant and another seeking title under the homestead laws of the United States, the statute would operate to give the defendant the better right. Neither this statute, nor the fact of the prior grant to the Northern Pacific, can affect the fact that Quine, the defendant, takes his title from the government. After the forfeiture, the title to this land was reinvested in the government, and passed from the government to Quine, and he took this title subject to the location of the plaintiff's flume under the acts of congress. There is an express reservation in the patent to the defendant, which shows that it was not the purpose of congress to convey any right inconsistent with that held under such a location. This land was liable to the imposition of this burden, while the title was in the government, and so of any right in the government at the time the flume was built. The railroad company did not complain, and the government could not, since what was done was in conformity with public policy and was authorized by law. In short, the title and all rights and interests relating to this land were either in the railroad company or in the government when the flume was built, and the appropriation was acquiesced in by the former, and expressly authorized by the latter. The location and construction of this flume upon granted lands of the railway company, with the acquiescence of that company, was not unlawful, so far as the government was concerned. The latter expressly authorized this very thing as to all unoccupied public land, and I conclude that any location authorized by the government upon the public domain is as effective, so far as the government is concerned, when made upon lands subject to forfeiture, as though the forfeiture had already taken place. The defendant took his homestead with the burden thus created. By the terms of his patent his title was made "subject to any vested and accrued water rights for mining, agricultural, manufacturing or other purposes, and rights to ditches used in connection with such water rights, as may be recognized by the local customs," etc.; and so taking, he acquiesced in the operation of the flume in question over his land for some seven years from the date of his patent, and then committed the acts complained of in retaliation for a grievance growing out of another transaction which he claims to have suffered. The petition for a rehearing is denied.